# UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF LOUISIANA

## SHREVEPORT DIVISION

DONALD M. BOSWELL                    CIVIL ACTION NO. 11-739-P

VERSUS                               JUDGE WALTER

CLAIBORNE PARISH                     MAGISTRATE JUDGE HORNSBY
DETENTION CENTER, ET AL.

## REPORT AND RECOMMENDATION

This matter has been referred to the undersigned magistrate judge for review, report and recommendation in accordance with 28 U.S.C. §636(b)(1)(B).

## STATEMENT OF CLAIM

Before the court is a civil rights complaint filed in forma pauperis by pro se plaintiff Donald M. Boswell ("Plaintiff"), pursuant to 42 U.S.C. § 1983. This complaint was received and filed in this court on May 6, 2011. Plaintiff is currently incarcerated at the David Wade Correctional Center, but claims his civil rights were violated by prison officials while incarcerated at the Claiborne Parish Detention Center ("CPDC") in Homer, Louisiana. He names the Claiborne Parish Detention Center, Johnny Sumlin, John Goodwin, James Banks, and the staff of the Claiborne Parish Detention Center as Defendants.

**Claim #1**

Plaintiff claims he suffers from chronic kidney stones. He claims that on October 30, 2009, he had kidney stone pain. He claims he requested a sick call form from five

deputies and never received one.  Plaintiff admits that on November 6, 2009, he was seen by nurse Rachel Robinson-Harris for his condition.  He claims she requested that he provide a urine sample .  He claims he explained to her that he had been unable to urinate for the past two and a half days because of the kidney stone.  He claims Nurse Robinson-Harris accused him of playing games and told the deputy to take him to lock-down.

Plaintiff claims Deputy Blunt then locked him in a visitation booth for six hours. He claims he did not have access to a toilet, food, or water.  He claims he suffered inflamation of his bladder and extreme pain because he could not urinate.  He claims he was improperly restrained.  He claims after an hour, the nurse came to the booth and again asked him for a urine sample.  He claims he again told her that he could not urinate.  Plaintiff claims she cursed at him and left him in the room for five more hours.

Plaintiff claims he was then removed from the room and escorted to the booking office to take a urinalysis drug test.  He claims a female deputy escorted him into the restroom and watched and called him stupid as he struggled to urinate for the test.  He claims after he passed the drug test, he was again reshackled improperly.  He claims he could barely walk to his cell.  He claims the deputy then grabbed him under his left arm and dragged him to his cell, unshackled him, and pushed him into his cell.

Plaintiff claims that later that night, he passed two kidney stones.  He claims that on the morning of November 7, 2009, he was escorted to the nurse's station for blood

and urine tests.  He claims the nurse scheduled him to see the doctor on November 9, 2009.  He claims his urine test was positive for blood.

Plaintiff claims that on November 9, 2009, he did not see the doctor because he had a court hearing and status conference in Webster Parish.  Plaintiff claims that on November 10, 2009, he was restrained and escorted to the nurse's station.  He claims the nurse told him she had his medication.  He claims that according to his paperwork, Dr. Hearne saw him on the previous day, diagnosed him, and signed off on his prescribed treatment and medication.  He admits he was given a ten day supply of Bactrim. Plaintiff claims it took 45 days for him to complete the ten day dose of medication because the deputies did not regularly bring the pill cart to his dorm.  He claims the deputies forged the medication log book to show that they brought the pill cart to the dorm two times a day.

Plaintiff claims that on June 11, 2010, he experienced sharp pain in his right kidney because of a stone.  He claims he requested to see the nurse and asked for Tylenol.  He claims he was denied both requests.

**Claim #2**

Plaintiff claims that prior to his incarceration in July 2009, he tore the muscle wall lining his abdomen.  He claims he had an inguinal hernia the size of a golf ball.  He claims he entered CPDC on October 7, 2009, and was assigned a top bunk.  He claims that as a result of climbing to the top bunk, he tore the soft tissue and his hernia became

the size of a fist.  He claims he suffered an extremely painful burning sensation in his lower abdomen.

Plaintiff claims he was denied surgery for his hernia while he was a pretrial detainee.  Plaintiff admits he was seen by a nurse for his hernia, but does not remember the exact days.  He claims the hernia interfered with normal walking, running, standing to urinate, squatting, lifting, and climbing into his bed.  He claims it was a constant irritation.  Plaintiff admits that in January 2011, he had surgery to repair his hernia before a strangulation of his intestine occurred and he has made a full recovery.

**Claim #3**

Plaintiff claims he has suffered with IBS since he was a child.  He claims he has frequent diarrhea and problems with abdominal pain, bloating, stomach cramps, nausea, and excessive gas.  He claims his IBS is triggered by stress, anxiety, emotional fears, and nervousness.  He claims he is also gluten intolerant.  He claims his diet affects his IBS. He claims he lost 25 pounds in two and a half months because of diarrhea caused by the stressful environment and constant torment he was subjected to by the prison staff and inmates.  He claims he sometimes would have diarrhea 15 times in one day and occasionally had accidents in his clothes.  He claims that since he is no longer incarcerated at CPDC, he has gained 50 pounds and is able to manage his diet and stress better.

Plaintiff claims he was told the facility did not have anti-diarrhea medicine and that each inmate received the same food tray.  Plaintiff admits there is no known medical treatment for his condition other than stress management and diet modification.

**Claim #4**

Plaintiff claims that on April 5, 2010, he developed a bleeding stomach ulcer due to excessive stress caused by the prison environment.  He also believes the chemical agents used to punish inmates may have caused his ulcer.  He claims that since he has left the high stress level of being imprisoned at CPDC, and some personal issues have been resolved, and he has taken medication, his ulcer has healed.  He claims that on May 6, 2010, Deputy Blunt and Deputy Tucker watched him vomit but did nothing.  However, he admits he was taken to see the nurse because of his vomiting.  He claims he was denied medical treatment because the deputies are lazy, incompetent, sadistic, prejudice, and mean.  He also claims he was denied medical treatment because he is white and a former deputy accused of attempted rape.  He claims the doctor prescribed medication for his condition, but that the deputies failed to administer it as directed by the doctor.  He admits that on May 6 and 7, 2010, he received Milk of Magnesia and generic Zantac for his ulcer.  He admits he was seen by the nurse on May 6, 2010 and was examined by Dr. Hearn on May 7, 2010.

**Claim #5**

Plaintiff claims he has suffered with hypoglycemia most of his life.  He claims that when he has an episode, he suffers anxiety, hunger, heart palpitations, tremors,

weakness, night sweats, dizziness, headaches, and occasional lack of coordination and consciousness.  He claims that on October 7, 2009, he was experiencing a hypoglycemia episode when he arrived at CPDC.  He claims Lt. Drew and Nurse Harris did nothing to help him.  He claims Nurse Harris finally checked his blood sugar level and it was 58.  He admits she did have a food tray brought to him.  He claims that on November 7, 2009, he was finally seen by the prison nurse.  He claims he informed the nurse that he gets sick at night when his blood sugar level drops and that he has a hard time coping.  He claims he requested an evening snack tray.  He claims she denied his request.  He claims the staff also denied him snack trays, but gave them to their favorite inmates.  He claims he was denied the regular snack tray because of prejudice, hate, and punishment.

**Claim #6**

Plaintiff claims he had a head cold that turned into a chest cold and then bronchitis, pleurisy, and walking pneumonia.  He claims this added to his other health issues and increased his stress level.  He claims he still suffers from shortness of breath, insomnia, and painful headaches.  He claims his condition was diagnosed by Dr. Hearne in October 2009.  He claims he was denied sinus medication by the staff because they are lazy, prejudice, indifferent, and wanted to punish him.  He also claims he received delayed medical attention by the deputies.  He admits that on May 6, 2010, Dr. Hearne examined him and prescribed Bactrim for ten days.  He also admits that on May 10, 2010, he received an abuteral inhaler.  He also admits that he received cough drops, but felt he should have been given cold and sinus medicine.  He claims the medication

prescribed by Dr. Hearne was not properly administered by the deputies.  He claims he received it sporadically, therefore it was ineffective.  He claims it took deputies 32 days to administer his ten day supply of medication.  He claims that on June 7 and 8, 2010, Deputy Beene refused to give him his medication.  He claims that on June 27, 2010, Sgt. Hudson and Deputy Martis refused to give him his medication.  He admits that Deputy Allen later brought him his medication.  He claims that on July 4, 2010, Deputy Ferguson threw his medication away and logged in the book that he had given it to him.

Plaintiff claims that if he had not been denied a nurse visit and cold and sinus medication when he first asked, he would not have needed cough syrup, additional antibiotics, and cold and flu medication.

## Claim # 7

Plaintiff claims that on October 7, 2009, he was placed in a protective custody cell.  He claims he was in constant fear for his life because he was threatened with bodily harm and death by several inmates.  He claims he informed Lt. Harper of the incident and he did not respond.

Plaintiff claims that on October 9, 2009, he informed Sgt. Banks that he was in fear for his life.  He claims Sgt. Banks told him to inform the day shift.  He claims later that day he informed Deputy Mardis of the situation and he did not believe him. Plaintiff claims he was unable to sleep at night because of the constant fear for himself and his family.

Plaintiff claims that on May 7, 2010, Lt. Martis placed him in a cell with a violent mental patient.  He claims he was unable to sleep because he feared that he would be attacked.

Plaintiff claims that on May 25, 2010, the inmate made a shank out of an ink pen and paper.  He claims he threatened to kill him.  He claims he reported the incident to Warden Sumlin.  He said the inmate admitted to having the shank and making the threats.

Plaintiff claims that on May 26, 2010, he and the inmate were moved to an open bar cell.  He claims the inmate started bar fighting with the other inmates.  He claims the inmates in the common area threw urine in their cell four times and kool-aid twice.  He claims he was hit in the face and his Bible, bed, and clean clothes were splashed.  He claims there was no way to clean his cell and he was forced to wear soiled clothes and sleep on the urine soaked bed and blankets because laundry was not until the next day.

Plaintiff claims that on May 27, 2010, he told Lt. Martis about the incident caused by his cell mate's outburst against the other inmates.  He claims Lt. Martis did nothing.

Plaintiff claims that on May 30, 2010, a large fight broke out and four of the inmates involved were placed in his cell.  He claims he informed the deputy that he was on protective custody status.  He claims he was informed that he was no longer on protective custody status.  He claims the inmates were removed from his cell several days later.

Plaintiff claims that on June 18, 2010, inmate DeAngelo Barnett was placed in his cell after fighting with other inmates.  He claims inmate Barnett is an aggressive and violent mental health patient.  He claims he could not sleep because he was afraid of being attacked.

Plaintiff claims that on October 9, 2010, he informed Deputy Martis that inmate Cooper had threatened to throw urine and burning toilet paper rolls on him and his cell mate while they were asleep.  He claims he also told him he could jump him in the shower and rape him.  He claims inmate Cooper had seen his file and knew the address of his mother and son.  He informed Deputy Martis that he feared for his life and the life of his family.  He claims Deputy Martis accused him of fabricating the story.  He claims Deputy Ferguson then told inmate Cooper that he had ratted him out.  He claims inmate Cooper then made a shank and arrangements for no guards to be in the shower while he and his cell mate were showering.

Plaintiff claims that on November 1, 2010, he wrote a letter to Warden Sumlin informing him about the threats made to him and his family.  He claims Warden Sumlin refused to speak to him.  He claims several days later Warden Sumlin had inmate Cooper transferred to another facility.

**Claim # 8**

Plaintiff claims on numerous occasions, he was denied basic sanitary supplies and hygiene products including toilet paper, soap, tooth paste, and a tooth brush.

Plaintiff claims CPDC distributes toilet paper only on Fridays. He claims if an inmate runs out of toilet paper, he may ask for another roll. He claims he was denied toilet paper 45 times between October 7, 2009 and July 18, 2010. He claims the longest he waited for toilet paper was 48 hours. He claims he was denied toilet paper because of retaliation, laziness, sadistic personalities, and indifference by the deputies. He claims that on three different occasions, he was forced to use his underwear to clean himself and then wash it in the toilet.

**Claim #9**

Plaintiff claims he was labeled as a complainer, hypochondriac, and was retaliated against by willful neglect and verbal abuse. He claims that between November 23 and 27, 2009, his incoming mail was withheld from him as punishment.

**Claim # 10**

Plaintiff claims the mail room staff opened his mail and contacted Warden Sumlin when they saw it contained ACLU complaint forms. He claims that on January 13, 2010, Warden Sumlin had him forcefully escorted to the security office in restraints. He claims Warden Sumlin had a box that contained his legal mail and pictures of his son. He claims Warden Sumlin read his mail and threw the pictures of his son at him. He claims he also warned him not to file a complaint about the prison. He claims that after he returned to his cell, he sent a letter to his family regarding the abuse at the prison. He claims prison officials again opened his mail. He claims they then searched all of his property. He claims other inmates were allowed to read his legal papers regarding his

criminal case.  He claims these inmates became aggressive and violent towards him and threatened him.  He claims the deputies and inmates also damaged his property.  Plaintiff claims Sgt. Hudson then forcefully shoved him into an isolation cell with a violent, homosexual inmate who had Hepatitis C.  He claims the inmate spit on him and the cell. He claims when he was shoved into the cell, he fell against the metal ladder and fractured his left wrist.  He claims he was not allowed to see the nurse regarding his injury.

Plaintiff claims he was a pre-trial detainee working on his criminal case and civil cases regarding his property and child's custody. He claims his cases were pending in the Louisiana Twenty-Sixth Judicial District Court, Parish of Webster.

Plaintiff admits that in his criminal case he was represented by an attorney.  He claims he was denied access to the prison library and there was no inmate counsel.  He claims he was denied telephone access to his attorney.  He also claims that his attorney did not receive four letters that he mailed to him.  Plaintiff claims he was unprepared to defend himself in his criminal case because he was denied the right to make contact with his attorney as needed.

Plaintiff also claims that on April 28, 2010, a probation officer came to CPDC to prepare his PSI report.  He claims that after he was interviewed for the report, he was given the chance to write a statement to the sentencing judge.  He claims Lt. Drew and Lt. Aubrey harassed and rushed him.  He claims he was only given five minutes to write a statement.  He claims his sentence was harsher because the sentencing judge expected

more from him.   He claims that as a result, he was convicted and sentenced to 48 years imprisonment.

Plaintiff claims he was not allowed to file an appeal after his conviction because his court appointed attorney no longer represented him after he was convicted.

Plaintiff admits in his civil cases he was represented by an attorney.  He claims Deputy Audrey refused to notarize his paperwork in the civil matter regarding his property.  He claims this matter is still pending because of his family's indigent status. He claims his child custody issue has been resolved and visitation is pending.

**Claim #11**

Plaintiff claims that on January 13, 2010, he was written up for contraband.  He claims Lt. Lee found a pair of women's underwear in his possession and placed him in administrative segregation.  Plaintiff claims he was found guilty of the disciplinary charge.  He claims he was denied the right to present evidence that the underwear was men's underwear and not women's underwear.  He claims he was sentenced to loss of all privileges and reduced visitation. He claims that after the hearing, Sgt. Hudson grabbed his right arm, forcefully grabbed him while in restraints, and dragged him to his cell.

**Claim # 12**

Plaintiff claims he was placed in extended lock-down in an isolation/suicide cell for five and a half months after being found guilty of bogus charges.  He claims he was

only allowed to leave his cell in five point restraints.  He also claims he found insects, debris, and hair in his food.

Plaintiff claims his protective custody status was changed from law enforcement to homosexual so he could be celled with a homosexual inmate for 45 days.

Plaintiff claims he was denied a haircut and shave for ten weeks.  He claims Lt. Drew often delayed his family visits by 20 or 30 minutes because he was not clean shaven.

Plaintiff claims that on March 12, 2010, an inmate from maintenance painted the inside of his cell door.  He claims he was not allowed to change cells after he complained of the paint fumes.  He claims there was no ventilation in his cell and the fumes caused his eyes to burn and become bloodshot.  He also claims he lost consciousness for five hours.  He claims he has a migraine headache for two weeks.  He claims he had difficulty breathing and was sick to his stomach for three days.

Plaintiff claims that on May 13, 2010, his mattress was taken for six hours during a facility search.  He claims all mattresses were cut open, searched, and then repaired. He claims he later received a mattress that was covered with urine, feces, and blood.  He claims Lt. Mardis denied him another mattress or an opportunity to clean the one he had. He claims he could not sleep on the mattress because he feared contracting a communicable disease and the pungent smell.  He claims that after two days he was finally able to clean his mattress with his bath towel and soap.  He claims it took several days for the odor to disappear from his cell.  He also claims all inmates were stripped

naked and visually searched.  He claims six female deputies came to the dorm to see the naked inmates.

Accordingly, Plaintiff seeks damages, an investigation of the facility, and that all Defendants be terminated.

## LAW AND ANALYSIS

### Prescription

In Wilson v. Garcia, 471 U.S. 261 (1985), the Court articulated the guidelines to be used in determining what prescriptive period should apply to Section 1983 claims. The Court determined "§ 1983 claims are best characterized as personal injury actions" and the forum state's statute of limitations applicable to such claims should be used.  Id. at 280.  In Gates v. Spinks, 771 F.2d 916 (5th Cir. 1985), the Fifth Circuit Court of Appeals phrased the test as:  "The state statute governing the general tort remedy for personal injuries should apply to 1983 actions . . ." Gates, 771 F.2d at 919.

The Louisiana Civil Code provides a general prescriptive statute that governs tort actions.  The article subjects delictual actions to a liberative prescription of one year. See  La. C.C. art. 3492.  The Fifth Circuit qualified this prescriptive period, however, when it held that "a section 1983 action accrues and the statute of limitations begins to run when the plaintiff knows or has reason to know of the injury which is the basis for the action." Watts v. Graves, 720 F.2d 1416, 1417 (5th Cir. 1983).  Finally, prescription on the claim is tolled while the administrative remedy procedure is pending.  See Harris v. Hegmann, 198 F.3d 153 (5th Cir. 1999).

**Sick Call**

Plaintiff claims that on October 30, 2009, he was denied a sick call form.  Thus, prescription began to run as to this claim in October 2009 at the latest.  Plaintiff claims that on November 6, 2009, he received inadequate medical treatment, was locked in a visitation booth for six hours without basic necessities, was shackled improperly, and was grabbed, dragged and pushed into his cell.  Thus, prescription began to run as to these claims in November 2009 at the latest.  Plaintiff claims that on November 10, 2009, he was given medication without being seen by the doctor.  He also claims that his medication was dispensed improperly.  Thus, prescription began to run as these claims in November 2009 at the latest.  The above entitled and numbered complaint was not filed by the Clerk of Court until May 6, 2011.  Plaintiff's claims are therefore prescribed and should be dismissed with prejudice.

**Hernia**

Plaintiff claims that in October 2009, he aggravated his pre-existing hernia climbing to his assigned top bunk.  Thus, prescription began to run as to this claim in October 2009 at the latest.  The above entitled and numbered complaint was not filed by the Clerk of Court until May 6, 2011.  Plaintiff's claims are therefore prescribed and should be dismissed with prejudice.

**Ulcer**

Plaintiff claims that on April 5, 2010, he developed a bleeding stomach ulcer.  He claims the excessive stress caused by the prison environment and chemical agents caused

his ulcer.  Thus, prescription began to run as to this claim in April 2010 at the latest.  The above entitled and numbered complaint was not filed by the Clerk of Court until May 6, 2011.  Plaintiff's claim is therefore prescribed and should be dismissed with prejudice.

**Hypoglycemia**

Plaintiff claims that on October 7, 2009, he suffered a hypoglycemia episode and received inadequate medical treatment.  Thus, prescription began to run as to this claim in October 2009 at the latest.  Plaintiff claims that on November 7, 2009, he saw the nurse and she denied his request for an evening snack tray.  Thus, prescription began to run as to this claim in November 2009 at the latest.  The above entitled and numbered complaint was not filed by the Clerk of Court until May 6,  2011.  Plaintiff's claims are therefore prescribed and should be dismissed with prejudice.

**Fear**

Plaintiff claims that on October 7, 2009, he was placed in a protective custody cell.  He claims he was in constant fear because he had been threatened by several inmates.  Thus, prescription began to run as to this claim in October 2009 at the latest.  The above entitled and numbered complaint was not filed by the Clerk of Court until May 6,  2011.  Plaintiff's claim is therefore prescribed and should be dismissed with prejudice.

**Mail Withheld**

Plaintiff claims that in November 2009, his incoming mail was withheld from him as a form of punishment.  Thus, prescription began to run as to this claim in November

2009 at the latest.  The above entitled and numbered complaint was not filed by the Clerk of Court until May 6,  2011.  Plaintiff's claim is therefore prescribed and should be dismissed with prejudice.

**Mail Opened and Read**

Plaintiff claims that in January 2010, the mail room staff opened his mail and Warden Sumlin read his mail.  He also claims other inmates read his mail.  He claims the deputies and inmates damaged his property.  He claims he was placed in a cell with a violent inmate with a communicable disease.  He claims he fractured his wrist when he was shoved into his cell and was denied medical treatment.  Thus, prescription began to run as to these claims in January 2010 at the latest.  The above entitled and numbered complaint was not filed by the Clerk of Court until May 6,  2011.  Plaintiff's claims are therefore prescribed and should be dismissed with prejudice.

**False Write-Up**

Plaintiff claims that in January 2010, he was falsely written up for contraband and found guilty without the right of being allowed to present evidence.  He claims that after the hearing, he was grabbed and dragged to his cell.  Thus, prescription began to run as to this claim in January 2010 at the latest.  The above entitled and numbered complaint was not filed by the Clerk of Court until May 6,  2011.  Plaintiff's claims are therefore prescribed and should be dismissed with prejudice.

**Paint Fumes**

Plaintiff claims that in March 2010, his cell was painted and he was not allowed to change cells after complaining about the fumes which made him sick for two weeks. Thus, prescription began to run as to this claim in March 2010 at the latest. The above entitled and numbered complaint was not filed by the Clerk of Court until May 6, 2011. Plaintiff's claim is therefore prescribed and should be dismissed with prejudice.

## Other Claims

Some of Plaintiff's claims, including some claims already addressed above, are also subject to dismissal as frivolous or for failure to state a claim.

**Denial of Medical Treatment**

Plaintiff filed this claim pursuant to 42 U.S.C. § 1983 of the Civil Rights Act which provides redress for persons "deprived of any rights, privileges or immunities" by a person acting under color of state law. The particular right protected under 42 U.S.C. § 1983 in matters which concern alleged denial of or inadequate medical care is the Eighth Amendment prohibition against cruel and unusual punishment.

The lack of proper inmate medical care rises to the level of a constitutional deprivation under the Eighth Amendment of the United States Constitution only if the evidence shows that the prison officials showed "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976); See also Farmer v. Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978 (1994). It is only deliberate indifference, "an unnecessary and wanton infliction of pain" or an act

"repugnant to the conscience of mankind," that constitutes conduct proscribed by the Eighth Amendment.  Estelle, 429 U.S. at 105-06, 97 S. Ct. at 292; See also Gregg v. Georgia, 428 U.S. 153, 96 S. Ct. 2909 (1976).  Further, the plaintiff must establish that the defendants possessed a culpable state of mind.  See Wilson v. Seiter, 501 U.S. 294, 297-302, 111 S. Ct. 2321, 2323-27 (1991); Farmer, 511 U.S. at 838-47, 114 S. Ct. at 1979-84.  A delay in medical care will violate the Eight Amendment only if the delay is based on deliberate indifference and results in substantial harm.  Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993).  In addition, disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs. See Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

**Kidney Pain**

Plaintiff claims that on June 11, 2010, his requests to see a nurse and for Tylenol for sharp pain in his kidney were denied.  The facts alleged do not support a finding of deliberate indifference to serious medical needs. Plaintiff's allegations, if accepted as true, may amount to a state law claim for negligence, a tort.  However, mere negligence, neglect or medical malpractice does not amount to a denial of a constitutional right as these actions on the part of Defendants do not rise to the level of a constitutional tort. See Daniels v. Williams, 474 U.S. 327, 329-30, 106 S. Ct. 662, 664 (1986); Estelle, 429 U.S. at 106, 97 S. Ct. at 292; Lewis v. Woods, 848 F.2d 649, 651 (5th Cir. 1988).  The fact that Plaintiff does not believe that his medical treatment was as good as it should

have been is not a cognizable complaint under the Civil Rights Act.  See Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985).  Prisoners are not constitutionally entitled to the best medical care that money can buy. See Mayweather v. Foti, 958 F.2d. 91 (5th Cir. 1992).

Accordingly, Plaintiff's claim should be dismissed with prejudice as frivolous.

**Hernia**

Plaintiff admits he had the hernia prior to his incarceration.  He also admits he was seen by the medical staff for his hernia which he described as a constant irritation. He further admits that in January 2011, he had surgery to repair the hernia before strangulation of his intestine occurred and he made a full recovery.  Plaintiff's complaint is devoid of factual allegations that would tend to show Defendants acted with a culpable state of mind or that their actions were "unnecessary and wanton."  Furthermore, Plaintiff does not allege how the delay in having surgery was based on deliberate indifference and resulted in any substantial harm.

Accordingly, Plaintiff's claim should be dismissed with prejudice as frivolous.

**IBS**

Plaintiff claims he suffers from IBS.  He claims prison conditions aggravated his condition.  He claims he did not receive anti-diarrhea medicine and a special diet for his condition.   Plaintiff admits there is no known medical treatment for his condition. Plaintiff's complaint is devoid of factual allegations that would tend to show Defendants

acted with a culpable state of mind or that their actions were "unnecessary and wanton."

Accordingly, Plaintiff's claim should be dismissed with prejudice as frivolous.

**Vomiting**

Plaintiff claims that on May 6, 2010, Deputy Blunt and Deputy Tucker did nothing as he was vomiting. He claims the deputies failed to administer his medication as directed. The court finds that the facts alleged do not support a finding of deliberate indifference to serious medical needs. Plaintiff admits that he was seen by both the doctor and the nurse. He also admits that he was prescribed medication and given medication for his condition. He further admits that his ulcer has healed. Plaintiff's complaint is devoid of factual allegations that would tend to show Defendants acted with a culpable state of mind or that their actions were "unnecessary and wanton." Furthermore, Plaintiff does not allege the deputies acted with deliberate indifference to a serious medical need when they failed to administer his medication as directed by the doctor.

Accordingly, Plaintiff's claim should be dismissed with prejudice as frivolous.

**Head Cold**

Plaintiff claims that in October 2009, he was diagnosed with a head cold. He claims he was denied sinus medication by the staff. He also claims he received delayed medical treatment.

Plaintiff admits that in October 2009, he was seen by Dr. Hearne. He admits that on May 6, 2010, he was examined by Dr. Hearne and prescribed Bactrim for ten days.

He also admits that on May 10, 2010, he received an abuteral inhaler.  He also admits that he received cough drops, but felt that he should have been given cold and sinus medication.  Plaintiff's complaint is devoid of factual allegations that would tend to show Defendants acted with a culpable state of mind or that their actions were "unnecessary and wanton."  Furthermore, Plaintiff fails to allege that deputies acted with deliberate indifference to a serious medical need when they failed to dispense his Bactrim as directed.

Accordingly, Plaintiff's claim should be dismissed with prejudice as frivolous.

**Conclusory Allegations**

Plaintiff claims the staff denied him snack trays because of prejudice, hate, and punishment, but gave snack trays to their favorite inmates.  Section 1983 plaintiff has long been required to plead his case with "factual detail and particularity," not mere conclusory allegations.  Elliot v. Perez, 751 F.2d 1472, 1473 (5th Cir. 1985); Hale v. Harney, 786 F.2d 688 (5th Cir. 1986).  The Supreme Court has abolished this heightened pleading standard for claims against municipalities, Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 113 S.Ct. 1160 (1993), but the requirement remains firmly in place for claims against individual public officials. See Schultea v. Wood, 47 F.3d 1427 (5th Cir.1995) (en banc).

In this case, Plaintiff has named individual prison officials as defendants and is therefore required to give factual details regarding his alleged constitutional rights

violations.  Plaintiff has failed to do so. Accordingly, these claims should be dismissed for failure to state a claim on which relief may be granted.

**Inmate Threat Claim**

Plaintiff claims that on May 7, 2010, he was placed in a cell with a violent mental patient.  He claims that on May 25, 2010, the inmate made a shank and threatened to kill him.  Plaintiff admits that the inmate did not attack him.  Plaintiff claims that on May 26, 2010, he had urine and kool-aid thrown into his cell because his cell mate started bar fighting with other inmates.  Plaintiff claims that on May 30, 2010, four inmates involved in a fight were placed in his cell for several days.  Plaintiff claims that on June 18, 2010, another aggressive and violent mental health patient was placed in his cell. Plaintiff claims that on October 9, 2010, he informed Deputy Martis that an inmate had made threats against him and his family. He claims the inmate had a shank.  He claims that in November 2010, Warden Sumlin transferred the inmate to another facility.

Under the Eighth Amendment, prison officials are required to provide humane conditions of confinement, ensuring that inmates receive adequate food, clothing, shelter and medical care, and must take reasonable measures to guarantee the safety of inmates. See Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970 (1994).  "It is not, however, every injury suffered by a prisoner at the hands of another that translates into constitutional liability for prison officials."  Farmer, 114 S.Ct. at  1977.  Instead, to prevail on a claim based on a failure to protect, the inmate must show that he is incarcerated "under conditions posing a substantial risk of serious harm" and that the defendant prison

officials were deliberately indifferent to the inmate's health and safety.  Id. at 1977-78. The test for deliberate indifference is a subjective one.  Thus, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of fact from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 1979.

In this case, after a thorough review of Plaintiff's complaint, read in a light most favorable to him, the court finds that the facts alleged do not support a finding of deliberate indifference. Plaintiff does not allege that prison officials were aware of  any excessive risk.  In fact, Plaintiff has failed to allege that he was attacked by his cell mates or any inmate that made threats against him.  Accordingly, the actions on the part of the prison officials do not evidence an attitude of deliberate indifference.

Furthermore, Plaintiff's allegations fail to demonstrate that he has sustained any physical injury as a result of the alleged failure to protect.  Under the Prison Litigation Reform Act, "no Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C.A. § 1997e(e).  Plaintiff seeks monetary compensation, but fails to allege a physical injury caused by Defendants' alleged failure to protect.

Accordingly, Plaintiff's claims should be dismissed with prejudice as frivolous.

**Custody Status**

Plaintiff claims that on May 30, 2010, he was informed that Warden Sumlin removed him from protected custody status.  This is not a claim that this court can resolve.  Federal courts should not, under the guise of enforcing constitutional standards, assume the superintendence of state prison administration.  See Jones v. Diamond, 636 F.2d 1364, 1368 (5th Cir. 1981) (en banc) (overruled on other grounds).  Thus, this court accords state prison administrators wide-ranging deference to adopt and to execute policies and practices that are needed to maintain and preserve order, discipline and security in prison.  See Bell v. Wolfish, 441 U.S. 520, 547 (1979).

The classification of prisoners is such a practice that is left to the discretion of prison officials.  See McCord v. Maggio, 910 F.2d 1248, 1250 (5th Cir. 1990).  "It is well settled that '[p]rison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status'." McCord, 910 F.2d at 1250 (quoting Wilkerson v. Maggio, 703 F.2d 909 (5th Cir. 1983)).

In Louisiana, the classification of prisoners is the duty of the Department of Corrections and an inmate, such as Plaintiff, has no right to a particular classification. In addition, "speculative, collateral consequences of prison administrative decisions do not create constitutionally protected liberty interests." Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995) (citing Meachum v. Fano, 427 U.S. 215, 299 n.8, 96 S. Ct. 2532, 2540 n.8 (1976)). Thus, the prison officials' decision to remove Plaintiff from protective

custody status and the resulting consequences of such decision do not give rise to constitutionally protected liberty interests.   Plaintiff's claims with respect to his classification are frivolous because they lack an arguable basis in law and in fact, and they should be dismissed with prejudice as frivolous.

**Conditions of Confinement**

Plaintiff claims on numerous occasions, he was denied basic sanitary supplies and hygiene products including toilet paper, soap, tooth paste, and a tooth brush.  He claims he was denied toilet paper 45 times between October 7, 2009 and July 18, 2010.  He claims the longest he waited for toilet paper was 48 hours.  He claims that on three different occasions, he was forced to use his underwear to clean himself and then wash it in the toilet afterwards.

Plaintiff also claims that while on extended lock-down, on many occasions his food was tampered with because he found insects, debris, and hair in his food.  He claims he was denied a haircut and shave for ten weeks.  Plaintiff claims that on May 13, 2010, he was given a mattress that was covered with urine feces and blood.  He claims that he was not allowed to clean the mattress for two days.  He claims it took several days for the odor to disappear from his cell.

Plaintiff filed this claim pursuant to 42 U.S.C. § 1983 of the Civil Rights Act which provides redress for persons "deprived of any rights, privileges or immunities" by a person acting under color of state law.  The particular right protected under 42 U.S.C. § 1983 in matters which concern alleged unconstitutional conditions of confinement is

the Eighth Amendment prohibition against cruel and unusual punishment.  Under the Eighth Amendment, prison officials are required to provide humane conditions of confinement, ensuring that inmates receive adequate food, clothing, shelter and medical care, and must take reasonable measures to guarantee safety of inmates.  See Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970 (1994).

An Eighth Amendment claim has two required components. See Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324 (1991).  First, the deprivation alleged must be sufficiently serious. See id., 111 S. Ct. at 2324.  "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave" to constitute cruel and unusual punishment. Id., 111 S. Ct. at 2324 (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399 (1981)).  Furthermore, this court should consider the duration and the totality of the specific circumstances that constituted the conditions of Plaintiff's confinement.  Palmer v. Johnson, 193 F.3d 346 (5th Cir. 1999).  Second, the prison official must have acted with a sufficiently culpable state of mind. See id. at 305, 111 S. Ct. at 2328; Farmer, 511 U.S. at 838, 114 S. Ct. at 1979.  In prison condition of confinement cases, that state of mind is deliberate indifference, which the Supreme Court recently defined as knowing of and disregarding an excessive risk to inmate health or safety.  See id., 114 S. Ct. at 1979.

The facts alleged do not support a finding that Defendants' conduct was sufficiently harmful enough to deprive him of life's basic necessities.  See Wilson, 501 U.S. at 298, 111 S. Ct. at 2324.  Accordingly, the conditions alleged do not rise to the

level of cruel and unusual punishment.  Plaintiff's claims lack an arguable basis in law and should be dismissed with prejudice as frivolous.

**Retaliation**

To state a claim of retaliation, an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident--such as the theft of his personal property--would not have occurred. Woods v. Smith, 60 F.3d 1161 (5th Cir. 1995), citing Mt. Healthy City School Board District Bd. Of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

Plaintiff's allegations that he was retaliated against are unconvincing. The retaliatory motive alleged by Plaintiff is entirely conclusory as he provides no evidence that "but for" this motive, he would have been subjected to will neglect and verbal abuse.  Accordingly, these actions by prison officials do not implicate any constitutional rights and his claim should be dismissed as frivolous.

**Access to Courts**

Plaintiff claims that while working on his criminal case, he was denied access to the prison library and an inmate counsel.  He claims he was denied telephone access to his attorney.  He claims his attorney did not receive four letters that he mailed to him. He claims he was unprepared to defend himself.  He claims he was not given adequate time to prepare his statement for the pre-sentence investigation report.  He claims that as a result, he was convicted and sentenced to 48 years imprisonment.  He also claims

he was not allowed to file an appeal.  Plaintiff claims that while working on his civil case regarding his property, a deputy refused to notarize his paperwork.

Prisoners  have a constitutional right of meaningful access to the courts. Degrate v. Godwin, 84 F.3d 768, 768-69 (5th Cir.1996) (quoting Bounds v. Smith, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977)).  However, this constitutional guarantee is not without limitation.  Lewis v. Casey, 518 U.S. 343 (1996)  (quoting Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261-62, 96 L.Ed.2d 64 (1987)).  In Lewis v. Casey, 518 U.S. 343, (1996), the Supreme Court reviewed its holding in Bounds v. Smith, 430 U.S. 817, (1977) which  is the source of a prisoner's constitutional right to "meaningful access to the courts."  While the Supreme Court reaffirmed a prisoner's right of access to the courts in Lewis, the Court limited the parameters of Bounds and set forth a standard to be applied when determining whether to grant relief for an access to the courts violation.  In so holding, the Court noted that a prisoner must show an actual injury, explaining that this requirement is derived from the doctrine of standing. Lewis, 116 S.Ct. at 2179.  The Court used the analogy of a prisoner who is denied access to that of a healthy prisoner who has been deprived of medical treatment.  In both cases, neither the access deprived prisoner nor the healthy prisoner have sustained constitutional injury, and thus, are not entitled to relief under Section 1983.  The Court emphasized that the court's role is to provide relief to claimants who have suffered actual harm, not to interfere with the management of prisons.

Accordingly, the Fifth Circuit has held that a prisoner cannot prevail on an access to the courts claim without proving an actual injury in non-frivolous litigation as a result of the defendant's alleged unconstitutional conduct.  Ruiz v. United States, 160 F.3d 273, 275 (5th Cir. 1998); Chriceol v. Phillips, 169 F.3d 313, 317 (5th Cir. 1999).

Application of the actual injury requirement to the instant case supports a finding that Plaintiff's claims are frivolous.  Plaintiff has failed to demonstrate that he lost the right to commence, prosecute or appeal any suit as a result of the alleged denial of access to a law library, inmate counsel, or notary.  He admits he was represented by an attorney during his criminal and civil proceedings.  Furthermore, Plaintiff was able to file an appeal after his conviction.  See State v. Boswell, 62 So.3d 874 (La. App. 2 Cir.) 46,181, writ denied, 76 So.3d 1174, 2011-1246 (La. 12/2/11).

Plaintiff's complaint in this court reveals on its face that he was able to clearly present his claims to this court.  He admits that his child custody case has been resolved.  He admits that he cannot pursue the property matter at this time because he is indigent.  Thus, he has failed to state any actual injury.

Accordingly, Plaintiff's claims should be dismissed with prejudice as frivolous.

**False Charges**

To the extent Plaintiff claims Defendants filed false disciplinary reports against him, Plaintiff has no right which protects him from being charged with a disciplinary offense.  This is true regardless of the truth of the initial report.  Freeman v. Rideout, 808 F.2d 949, 952 (2nd Cir. 1986); Hanrahan v. Lane, 747 F.2d 1137, 1140-41 (7th Cir.

1984); <u>Cardine v. Tucker</u>, 23 F.3d 406 (Table), 1994 U.S. App. LEXIS 17566 (6th Cir. 1994).  Accordingly, in the instant case, even if the actions of Defendants  resulted in false disciplinary action being taken against him, Plaintiff's claim against them is not cognizable because he has no constitutional protection from being wrongly charged with a disciplinary offense.

Accordingly, Plaintiff claims regarding false disciplinary reports should be dismissed with prejudice as frivolous.

**Improper Classification**

Plaintiff claims he was placed in extended lock-down in an isolation cell for five and a half months.  He also claims his protective custody status was changed to homosexual custody status.  As previously discussed, these are not claims that this court can resolve.   The classification of prisoners is left to the discretion of prison officials and an inmate, such as Plaintiff, has no right to a particular classification.  Thus, the prison officials' decisions to place Plaintiff in extended lock-down in an isolation/suicide cell and to remove Plaintiff from protective custody status and the resulting consequences of such decisions do not give rise to constitutionally protected liberty interests.  Plaintiff's claims with respect to his classification are frivolous because they lack an arguable basis in law and in fact, and they should be dismissed with prejudice as frivolous.

**Strip Search**

Plaintiff claims female guards viewed him being strip searched.  In <u>Letcher v. Turner</u>, 968 F.2d 508 (5th Cir.1992), the Fifth Circuit held that prison officials could conduct strip searches within view of female officers. However, in <u>Moore v. Carwell</u>, 168 F.3d at 237 (5th Cir. 1999), the Fifth Circuit stated that when a female officer conducts a strip search of a male inmate, in the absence of an emergency or extraordinary circumstances, a viable Fourth Amendment claim could be stated.  In this case, Plaintiff does not allege in his pleadings that a female officer conducted a strip search on him; rather, he claims only that female officers were present when the strip searches were conducted.  Plaintiff's claims lack an arguable basis in law and should be dismissed with prejudice as frivolous.

## CONCLUSION

Because Plaintiff filed this proceeding <u>in forma pauperis</u> ("IFP"), if this court finds Plaintiff's complaint to be frivolous, it may dismiss the complaint as such at any time, before or after service of process, and before or after answers have been filed.  <u>See</u> 28 U.S.C. § 1915(e); <u>Green v. McKaskle</u>, 788 F.2d 1116, 1119 (5th Cir. 1986); <u>Spears v. McCotter</u>, 766 F.2d 179, 181 (5th Cir. 1985).  District courts are vested with extremely broad discretion in making a determination of whether an IFP proceeding is frivolous and may dismiss a claim as frivolous if the IFP complaint lacks an arguable basis either in law or in fact.  <u>See</u> <u>Hicks v. Garner</u>, 69 F.3d 22 (5th Cir. 1995); <u>Booker v. Koonce</u>, 2 F.3d 114 (5th Cir. 1993); <u>Neitzke v. Williams</u>, 490 U.S. 319, 109 S.Ct. 1827 (1989).

For the reasons heretofore stated, it is recommended that Plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous under 28 U.S.C. § 1915(e).

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objection within ten (10) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendations set forth above, within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking, on appeal, the proposed factual findings and legal conclusions that were accepted by the district court and that were not objected to by the aforementioned party.  See Douglas v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

**THUS DONE AND SIGNED**, in chambers, in Shreveport, Louisiana, on this 12th day of September 2014.

Mark L. Hornsby
U.S. Magistrate Judge