UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

DONALD M. BOSWELL                         CIVIL ACTION NO. 11-cv-0739

VERSUS                                    JUDGE WALTER

CLAIBORNE PARISH DETENTION                MAGISTRATE JUDGE HORNSBY
CENTER, ET AL

**REPORT AND RECOMMENDATION**

**Introduction**

Donald Boswell ("Plaintiff") is a self-represented inmate. He alleged in this civil rights action that officials at the Claiborne Parish Detention Center violated his civil rights while he was housed at that facility as a pretrial detainee. This court originally dismissed his complaint as frivolous. The Fifth Circuit affirmed the dismissal of several claims but found that four claims merited further proceedings. Doc. 24; Boswell v. Claiborne Parish Detention Center, 629 Fed. Appx. 580 (5th Cir. 2015).

After remand, this court dismissed all claims against (1) the Claiborne Parish Detention Center, which is not a legal entity, and (2) unspecified "staff" of the Detention Center. Docs. 36 and 46. The remaining defendants—Warden Johnny Sumlin, Assistant Warden John Goodwin, and Major James Banks—filed a motion for summary judgment (Doc. 61) that attacked the remaining claims. The court granted the motion for the most part. The only remaining claim is that Warden Johnny Sumlin and Major James Banks denied Plaintiff proper care and attention for a hernia. Docs. 70 & 82.

The undersigned held an evidentiary hearing on May 31, 2017 pursuant to 28 U.S.C. § 636(b)(1)(B). Each of the three parties testified, and the court admitted into evidence medical records and a stipulation of the relevant facts presented in those records. After considering the evidence and the applicable law, it is recommended for the reasons that follow that judgment be entered for the defendants on all remaining claims.

**Timeliness Issues**

Defendants have raised timeliness as a defense. A Section 1983 claim brought by a Louisiana prisoner is governed by a one-year prescriptive period. Elzy v. Roberson, 868 F.2d 793 (5th Cir. 1989). The cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. Lavellee v. Listi, 611 F.2d 1129, 1131 (5th Cir. 1980); Crane v. Childers, 2016 WL 3689708 (5th Cir. 2016). The filing of an ARP grievance can toll the limitations period, but Plaintiff admits that he did not file a grievance. Defendants stated during motion practice that they were not then raising an exhaustion defense due to factual disputes on the availability of an administrative remedy at the Detention Center, and they did not raise the defense at the hearing.

A mailbox rule applies to Section 1983 complaints filed by pro se prisoners and deems the complaint filed when the prisoner tenders it to prison officials for mailing. Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir.1995). The envelope that Plaintiff used to mail his original complaint bears a David Wade Correctional Center ("DWCC") mailroom stamp and a USPS postmark, both dated May 5, 2011. Plaintiff did not sign and date his original

complaint, but he promptly cured that deficiency when it was noted by the court, so the amended complaint and its signature relate back and make the filing date of the original complaint the relevant mark for assessing timeliness.[1] The earliest evidence of tendering is from May 5, 2011, so that is the date of commencement of this civil action for prescription purposes. That means that claims that accrued before May 5, 2010 are untimely.

**Relevant Evidence**

Plaintiff was about 37 years old when he was arrested in Webster Parish on October 6, 2009 on charges of aggravated rape of a juvenile and indecent behavior with a juvenile. The next day, October 7, 2009, Plaintiff was transferred to the Claiborne Parish Detention Center, located in an adjacent parish. The transfer was made so that Plaintiff could be placed in a protective custody setting due to the high-profile nature of his Webster Parish charges and his service as a Webster Parish volunteer reserve deputy.

Plaintiff pleaded guilty to attempted aggravated rape in April 2010 and was sentenced in June 2010 to 48 years in prison. State v. Boswell, 62 So.3d 874 (La. App. 2d Cir. 2011), writ denied, 76 So.3d 1174 (La.). He was transferred out of the Claiborne Parish Detention Center in July 2010 and into a Department of Corrections ("DOC") prison. Plaintiff was

---

[1] "When the unsigned pleading or other paper is tendered to the clerk for filing by the pro se party himself, that purpose of Rule 11(a) may be sufficiently fulfilled to allow relation back if the party with reasonable promptness thereafter signs and refiles the document." Gonzales v. Wyatt, 157 F.3d 1016, 1021 (5th Cir. 1998), citing Adams v. Perloff, 784 F.Supp. 1195, 1198–1200 (E.D. Pa.1992). See also Fed. R. Civ. Pro. 11(a) ("The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention.")

eventually housed at the DWCC. The DWCC physician evaluated Plaintiff for hernia complaints in November 2010, surgery was performed at a hospital in January 2011, and Plaintiff recovered without incident.

The testimony at the hearing focused on the time that Plaintiff was at the Claiborne Parish Detention Center under the supervision of Warden Sumlin and Major Banks, which was from October 7, 2009 until July 2010. As noted, only claims that accrued on or after May 5, 2010 are timely.

Plaintiff testified that he told the booking officer about his medical issues when he arrived at the Detention Center. Those issues included an inguinal hernia, which occurs when a part of the intestine protrudes through a weak spot or tear in the abdominal muscles. It is generally recognized that the condition can be painful, especially when bending or lifting a heavy object.

Plaintiff was housed in a protective custody unit, where inmates are housed individually or two men per cell. They are on lockdown in that area 24 hours a day, with the exception of when they are released for matters such as sick call, visitation, showering, and similar activities. The cells were described as including bunk beds for two men, a toilet, and a sink. Plaintiff was sometimes in a cell by himself, but he was often housed with a cellmate.

Plaintiff testified that he was "assigned" a top bunk during the times when he was housed with another inmate. Plaintiff said that climbing on and off the upper bunk each time he had to go to the bathroom, get a meal, or for any other reason caused him a great deal of

pain and aggravated his hernia. He said that he asked several times to be moved to a bottom bunk, but his requests were always denied.

Plaintiff testified that the officers checked the cells in the morning and again in the afternoon, and he often encountered Major Banks during those checks. He asked Banks for a bottom bunk assignment, but Banks said he could not move Plaintiff. Plaintiff testified that he made these requests of Banks as late as May and June of 2010. Plaintiff said he talked to Warden Sumlin a "couple of times" about the hernia/bunk issue. He said that Sumlin once told him he needed to talk to Major Banks, and another time said that he (Sumlin) did not care. Plaintiff testified that he was later put in a cell with DOC prisoners, and his problems continued despite asking for assistance every day. Plaintiff did not specify the date of his alleged conversations with Warden Sumlin.

Plaintiff testified that he saw nurse Rachel Harris at the Detention Center in November 2009 for treatment of a kidney stone. He asked the nurse for a hernia belt, but she allegedly told him that the Detention Center did not treat pretrial detainees for such matters; he would need to get convicted and transferred to a DOC facility to get such treatment. Plaintiff offered similar testimony that Dr. Pamela Hearn made a similar statement to him in May 2010 and told him not to ask again.

Defense counsel asked Plaintiff about statements Plaintiff made in his deposition that he had quit complaining to Major Banks in January 2010. The deposition testimony was, "I had to stop, yes, sir" and "I was told to stop asking." Plaintiff said at trial that he admitted

making those statements in his deposition, but he had been confused. Plaintiff said at the hearing that he had actually continued to complain about his bunk assignment even after January 2010.

The records include a Medical Intake Screening that is dated October 12, 2009, a few days after Plaintiff arrived at the Detention Center. It includes a reference to conditions that include kidney stones, dislocated back, and "RIH" or right inguinal hernia. Exhibit J-2. Plaintiff testified at the hearing that he did not receive an intake examination, and he did not see a nurse until November 7. Plaintiff claimed that the nurse asked him at that time about his medical issues and completed a form that Plaintiff had been asked to sign in blank when he arrived at the Detention Center. Plaintiff's signature, however, does not appear on that screening form. His signature is on a health history profile dated October 7, 2009 (Exhibit D-1, Bates 30), and it appears that the same handwriting that dated the nurse's signature also placed the date by Plaintiff's signature. But there is nothing remarkable about either form, and there is no indication that Warden Sumlin or Major Banks had anything to do with their preparation.

Plaintiff similarly challenged an indication in the medical records that Dr. Pamela Hearn treated him on November 9, 2009. Plaintiff claims this was impossible because the records show that he was in court on that day. The records actually indicate that Plaintiff was examined by the nurse on November 7, 2009 and complained, among other things, that he had an inguinal hernia and that surgery had been scheduled before he was arrested. Urine

and blood tests were taken, and the nurse indicated that a prescription for Bactrim (an antibiotic) was indicated. Dr. Hearn issued that prescription on November 9, 2009. She did not state in the records that she actually examined Plaintiff on that day. Once again, even if Plaintiff had persuasive evidence that these records were somehow incorrect, it would do little or nothing to establish a claim against Warden Sumlin or Major Banks with respect to the bunk/hernia issue.

Major James Banks testified that he worked at the Detention Center for 14 years, beginning as a correctional officer and progressing through the ranks. He is now retired, but he was a major at the Detention Center during the relevant time. Banks testified that he did not ignore medical complaints from inmates, but he had no recollection of Plaintiff complaining to him about a hernia. Banks said that he did not even know what a hernia was.

Banks squarely disputed Plaintiff's contention that Plaintiff had been assigned to a top bunk. Banks said that bunks were not assigned in the lockdown cells. He said that inmates could agree to swap bunks, and he would not interfere. Plaintiff asked Banks repeatedly if he recalled various times in 2009 and 2010 when Plaintiff claimed to complain about his hernia or request a bunk change. Banks answered every time that he did not recall those conversations. The court asked Banks if he could recall *any* conversations with Plaintiff about bunks or hernia, and Banks said no.

Warden Johnny Sumlin testified that he retired from the DOC after 21 years, during which he was a lieutenant colonel at David Wade Correctional Center. He has been the

warden at the Claiborne Parish Detention Center for the last 10 years. Sumlin said he remembered Plaintiff, and Sumlin had been contacted to authorize Plaintiff's transfer to his facility. Sumlin recalled Plaintiff being housed in protective custody. He and Plaintiff quibbled at the hearing as to which cell Plaintiff was in at what time, but it was generally agreed that Plaintiff was in the protective custody unit in various cells during his stay. Sumlin said he recalled talking to Plaintiff about possibly moving Plaintiff to the general population. Plaintiff's questions indicated his strong disagreement with that memory, but the issue is not important to the resolution of the bunk/hernia claim.

Warden Sumlin, as did Major Banks, testified that there was not a policy for assignment of bunks. Sumlin said the only reason an inmate would be assigned to a lower bunk would be for medical matters such as an inmate who had one leg, was confined to a wheelchair, or the like. He said the medical department could issue such instructions, and he would comply with them, but no such instructions were ordered with respect to Plaintiff. Sumlin testified that Plaintiff did not complain to him about his hernia or make a request for a bottom bunk.

Warden Sumlin also denied the contention that a pretrial detainee at his facility could not get care for a hernia. He said that there were no different levels of care based on whether a prisoner was a pretrial detainee, DOC prisoner, state inmate, or from a particular parish.

Warden Sumlin said that inmates could file an administrative grievance on an ARP form or an ordinary piece of paper. Plaintiff, however, did not file any grievance during his

stay, and Sumlin said there was nothing to prevent him from doing so. Sumlin said he was also unaware that Plaintiff complained to any doctor, nurse, or Sumlin that he was not treated properly. Sumlin said he could not recall if he may have received a kite from Plaintiff requesting to see a nurse, but he said that he was sure Plaintiff would have seen the nurse if he made such a request.

**Elements of the Claim**

Constitutional challenges by pretrial detainees may be brought as an attack on a "condition of confinement" or based on an "episodic act or omission." Hare v. City of Corinth, 74 F.3d 633, 643 (5th Cir. 1996) (en banc). If the detainee complains of a particular act of, or omission by, a jail official, he must prove that the official "acted or failed to act with deliberate indifference to the detainee's needs." Hare, 74 F.3d at 648. The official must have had "subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk." Id. at 650; Zimmerman v. Cutler, 657 Fed. Appx. 340, 348 (5th Cir. 2016).

If the claim is an attack on conditions of confinement, which is usually a manifestation of an explicit policy or restriction (such as the number of bunks in a cell, or television or mail privileges), the detainee is not required to demonstrate actual intent to punish; intent may be inferred from an entity's decision to subject pretrial detainees to an unconstitutional condition. Montano v. Orange County, 842 F.3d 865, 877 (5th Cir. 2016); Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997). The challenged condition may amount to

improper punishment if it has no reasonable relationship to a legitimate governmental interest. Duvall v. Dallas County, 631 F.3d 203, 207 (5th Cir. 2011), citing Hare v. City of Corinth.

**Analysis**

### A. Conditions of Confinement

"A civil rights plaintiff alleging violations of the Eighth Amendment has the burden to prove his factual allegations by a preponderance of the evidence." Sayles v. Thomas, 24 F.3d 238 (5th Cir. 1994) (unpublished), citing Bender v. Brumley, 1 F.3d 271, 278 (5th Cir.1993). There was no evidence of a formal policy regarding bunk assignments, medical care, or otherwise that could support a conditions of confinement claim. Plaintiff was housed in cells with a bed for each man in the cell, and Banks and Sumlin squarely denied that there was any policy regarding bunk assignments in those cells. Plaintiff's testimony implied that there was some form of policy regarding bunk assignments, but it was not persuasive in light of the competing testimony.

Sumlin also squarely denied the contention that the facility had a policy of different levels of medical care for pretrial detainees. Plaintiff's only evidence that the Detention Center had a policy of affording lesser care to pretrial detainees was his testimony that a nurse and physician allegedly told him that he would need to wait until he was in DOC custody. Plaintiff did not list either of those persons on his witness list, and they did not testify, so it was impossible to examine them and determine whether they would admit

making the statements, whether they believed there truly was such a policy, or whether perhaps they used such an excuse as a personal reason to defer more complicated but non-emergency treatment to short-term inmates. Plaintiff has the burden of establishing his claims by a preponderance of the evidence. What he has offered on whether there was such a policy—to not treat pretrial detainees for hernia problems—does not satisfy that burden.

### B. Episodic Act or Omission

Plaintiff's claims that Sumlin and Banks denied his request to change bunks fall under the episodic act or omission category. Plaintiff testified that he twice made such a request of Sumlin, but Plaintiff did not specify a date on which those requests were made, so the court is unable to determine whether they were timely. Plaintiff alleges, inconsistent with his sworn deposition testimony, that he did make timely requests to Major Banks. Plaintiff's testimony on this issue is lacking in credibility, given his change in testimony once he realized that timeliness was an issue. Furthermore, Banks had no recollection of Plaintiff making any request to him for a bunk change or requesting other means of addressing a hernia problem.

There is competing evidence with respect to these claims. As in many cases, what actually happened is not readily apparent. The court is required to decide the issue, and the deciding factor is often which party bears the burden of proof. Plaintiff, as the person asserting his claims, bears the burden of proving the supporting facts by a preponderance of the evidence. Despite Plaintiff's dogged efforts and an admirable presentation of his case,

he simply has not met his burden of showing by a preponderance of the evidence that either Sumlin or Banks (1) had subjective knowledge of a substantial risk of serious harm to Plaintiff based on his bunk situation and (2) responded with deliberate indifference to that risk. Accordingly, a judgment should be entered for the two defendants.

Accordingly,

**IT IS RECOMMENDED** that all remaining claims against the remaining Defendants be dismissed with prejudice.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 21st day of June, 2017.

                                      Mark L. Hornsby
                                      U.S. Magistrate Judge